LOAN #

# NOTE

AUGUST 5, 2004                     GARDEN CITY,                     NEW YORK
[Date]                                [City]                        [State]

6 THISTLE LANE, KINGS PARK, NY 11754
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.    $269,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is INTERSTATE HOME LOAN CENTER, INC., A NEW YORK CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   5.950%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my payment on the   1st   day of each month beginning on   OCTOBER 1, 2004.

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   SEPTEMBER 1, 2034,   I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
80 JERUSALEM AVE.
HICKSVILLE, NY 11801

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S.   $1,723.42.

## 4. BORROWER'S RIGHT TO PREPAY   See Prepayment Note Addendum Annexed, hereto.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   2.000%   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Initials: P.G. M.G

NEW YORK FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3233 1/01
© 1999-2002 Online Documents, Inc.                     Page 1 of 2                     F3200NYN   0212

LOAN #

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
If Lender requires immediate payment in full under this Section 10, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
PETER GAYNOR

_____ (Seal)
MARY GAYNOR

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.
BY _____
Joan M. Mills, Vice President

[Sign Original Only]

## ALLONGE FOR THE PURPOSE OF ENDORSEMENT

**Loan Number:** 

**Loan Amount:**     $289,000.00

**Borrower(s):**     **PETER GAYNOR**
                     **MARCY GAYNOR**

**Property Address:**  6 THISTLE LANE
                       KINGS PARK, NY 11754

**Note Date:**      08/05/2004

WITHOUT RECOURSE
PAY TO THE ORDER OF

**WELLS FARGO BANK, N.A.**

INTERSTATE HOME LOAN CENTERS, INC., A NEW YORK CORPORATION

_____
NAME:
TITLE:
          Georgiana M. Rice
          Vice President Loan Documentation



# SUFFOLK COUNTY CLERK
## RECORDS OFFICE
### RECORDING PAGE

| | | |
|---|---|---|
| Type of Instrument: MORTGAGE/MMM | | Recorded: 10/01/2004 |
| Number of Pages: 12 | | At: 11:27:51 AM |
| Receipt Number : 04-0109286 | | |
| MORTGAGE NUMBER: ███ | | LIBER: M00020873 |
| | | PAGE: 107 |

| District: | Section: | Block: | Lot: |
|---|---|---|---|
| 0800 | 025.00 | 02.00 | 015.000 |

### EXAMINED AND CHARGED AS FOLLOWS

Mortgage Amount:           $289,000.00

Received the Following Fees For Above Instrument

| | | Exempt | | | Exempt |
|---|---|---|---|---|---|
| Page/Filing | $36.00 | NO | Handling | $5.00 | NO |
| COE | $5.00 | NO | NYS SRCHG | $15.00 | NO |
| Affidavit | $0.00 | NO | Cert.Copies | $0.00 | NO |
| RPT | $30.00 | NO | SCTM | $0.00 | NO |
| Mort.Basic | $1,445.00 | NO | Mort.Addl | $697.50 | NO |
| Mort.SplAddl | $0.00 | NO | Mort.SplAsst | $722.50 | NO |
| | | | Fees Paid | $2,956.00 | |

MORTGAGE NUMBER: ███

### THIS PAGE IS A PART OF THE INSTRUMENT
### THIS IS NOT A BILL

Edward P.Romaine
County Clerk, Suffolk County

| 1 | 2 | | 3 |

Number of pages    12

TORRENS

Serial # _____

Certificate # _____

Prior Ctf. # _____

Deed / Mortgage Instrument

Deed / Mortgage Tax Stamp

RECORDED
2004 Oct 01 11:27:51 AM
Edward P. Romaine
CLERK OF
SUFFOLK COUNTY
L M00020873
P 107
CU094546

Recording / Filing Stamps

**FEES**

| | | | |
|---|---|---|---|
| Page / Filing Fee | 96 | 9 A | Mortgage Amt. 289,000. |
| Handling | 5 | | 1. Basic Tax |
| TP-584 | | | 2. Additional Tax |
| Notation | | | Sub Total |
| EA-52 17 (County) | Sub Total 41 | 7 | Spec./Asait. - Or Spec./Add. |
| EA-5217 (State) | | | TOT. MTG. TAX 2865 |
| R.P.T.S.A. | 3000 | | Dual Town      Dual County |
| Comm. of Ed. | 5 00 | | Held for Apportionment |
| Affidavit | | | Transfer Tax |
| Certified Copy | | | Mansion Tax |
| Reg. Copy | | | The property covered by this mortgage is or will be improved by a one or two family dwelling only. |
| Other | K | Sub Total 50 | YES A   or NO |
| | | GRAND TOTAL 91 | 8 | If NO, see appropriate tax clause on page # of this instrument. |

| Real Property Tax Service Agency Verification | Community Preservation Fund |
|---|---|
| Dist.    Section      Block      Lot | Consideration Amount $ |
| Stamp         0800 02500 0200 015000 | CPF Tax Due |
| Date    KWC A | Improved |
| Initials    21-SEP-04 | Vacant Land |

Satisfactions/Discharges/Releases List Property Owners Mailing Address
RECORD & RETURN TO:

Interstate Home Loan Center
80 Jerusalem Ave.
Hicksville, Ny 11801

| | TD |
| | TD |
| | TD |

| 8 | Title Company Information |
|---|---|
| Co. Name | Topaz Abstract Corp |
| Title # | |

**Suffolk County Recording & Endorsement Page**

This page forms part of the attached    Mortgage    made by:
(SPECIFY TYPE OF INSTRUMENT)

Gaynor

A

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

TO

In the Township of    Smith town

Interstate

In the VILLAGE
or HAMLET of    Kings Park

BOXES 5 THRU 9 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

Dear Taxpayer,

Your satisfaction of mortgage has been filed in my office and I am enclosing the original copy for your records.

If a portion of your monthly mortgage payment included your property taxes, you will now need to contact your local Town Tax Receiver so that you may be billed directly for all future property tax bills.

Local property taxes are payable twice a year: on or before January 10th and on or before May 31st. Failure to make payments in a timely fashion could result in a penalty.

**Please contact your local Town Tax Receiver with any questions regarding property tax payment.**

Babylon Town Receiver of Taxes
200 East Sunrise Highway
North Lindenhurst, N.Y.  11757
(631) 957-3004

Riverhead Town Receiver of Taxes
200 Howell Avenue
Riverhead, N.Y.  11901
(631) 727-3200

Brookhaven Town Receiver of Taxes
250 East Main Street
Port Jefferson, N.Y.  11777
(631) 473-0236

Shelter Island Town Receiver of Taxes
Shelter Island Town Hall
Shelter Island, N.Y.  11964
(631) 749-3338

East Hampton Town Receiver of Taxes
300 Pantigo Place
East Hampton, N.Y.  11937
(631) 324-2770

Smithtown Town Receiver of Taxes
99 West Main Street
Smithtown, N.Y.  11787
(631) 360-7610

Huntington Town Receiver of Taxes
100 Main Street
Huntington, N.Y.  11743
(631) 351-3217

Southampton Town Receiver of Taxes
116 Hampton Road
Southampton, N.Y.  11968
(631) 283-6514

Islip Town Receiver of Taxes
40 Nassau Avenue
Islip, N.Y.  11751
(631) 224-5580

Southold Town Receiver of Taxes
53095 Main Street
Southold, N.Y.  11971
(631) 765-1803

Sincerely,

Edward P. Romaine
Suffolk County Clerk

dw
2/99

After Recording Return To:
INTERSTATE HOME LOAN CENTER, INC.
80 JERUSALEM AVE.
HICKSVILLE, NY 11801

TOPAZ
ABSTRACT
CORPORATION

370 Old Country Road
Garden City, N.Y.  11530

Title Order No:

LOAN #:

―――――――[Space Above This Line For Recording Data]―――――――

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated  AUGUST 5, 2004,                together with all Riders
to this document, will be called the "Security Instrument."
(B) "Borrower."  PETER GAYNOR AND MARCY GAYNOR,

whose address is 21 SOUTH BEDFORD AVENUE, ISLANDIA, NY 11722,

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender."  INTERSTATE HOME LOAN CENTER, INC.

will be called "Lender."

Lender is a corporation or association which exists under the laws of  NEW YORK.
Lender's address is  80 JERUSALEM AVE., HICKSVILLE, NY 11801.

(D) "Note." The note signed by Borrower and dated  AUGUST 5, 2004,                will be called the "Note." The
Note shows that I owe Lender  TWO HUNDRED EIGHT NINE THOUSAND AND NO/100*********
********************************************************* Dollars (U.S.  $289,000.00 )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay
the debt in full by  SEPTEMBER 1, 2034.
(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the
"Property."
(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the
Property" sometimes will be called the "Sums Secured."
(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The
following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider  ☐ Other(s) (specify)
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider
☐ V.A. Rider

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial
opinions will be called "Applicable Law."
(J) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that
are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization will be called "Community Association Dues, Fees, and Assessments."
(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common
examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used

NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3033 1/01    Initials: _____
© 1999-2004 Online Documents, Inc.                          Page 1 of 10                      NYDEED  0406

LOAN #:

at a merchant, automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L.) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(M) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(N) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(P) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at   6 THISTLE LANE, KINGS PARK,

[Street] [City, Town or Village]

New York    11754.
[Zip Code]

This Property is in   SUFFOLK                        County. It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.
APN #: 0800-025.00-02.00-013.000

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) though (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

NEW YORK--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3033 1/01    Initials: _PG MG_
© 1999-2004 Online Documents, Inc.                         **Page 2 of 10**                                    NYUDEED   0402

LOAN #: [redacted]

**COVENANTS**

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges and Next, as described in the Note.
Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. **Monthly Payments For Taxes And Insurance.**
(a) **Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents, and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items":

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
(2) The leasehold payments or ground rents on the Property (if any);
(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
(4) The premium for Mortgage Insurance (if any);
(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument, and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and

LOAN #: ▮▮▮▮▮▮

reasonable estimation of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.** Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Funds.** Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. This insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request that the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

LOAN # ▮▮▮▮▮▮

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly, prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Borrower's Obligations to Occupy the Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.  **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a). **Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8.  **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9.  **Lender's Right to Protect Its Rights In The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest

LOAN #

rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or alter that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage Insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3033 1/01      Initials: 
© 1999-2004 Online Documents, Inc.                              Page 6 of 10

LOAN #:

date the Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.** Lender may allow me, or a person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make immediate payment in full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might

NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3033 1/01    Initials: _PG  ML_
© 1999-2004 Online Documents, Inc.    Page 7 of 10    NYUDEED  0402

LOAN #:

be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural; and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys'

fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales. The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join, or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous

LOAN #: _____

Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights if Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:
(1) The promise or agreement that I failed to keep or the default that has occurred;
(2) The action that I must take to correct that default;
(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;
(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

**Topaz Abstract Corporation**

Schedule A Description

Underwriter No.
Title Number

Page    1

ALL that certain plot, piece or parcel of land, situate, lying and being at Kings Park, Town of Smithtown, County of Suffolk and State of New York, known and designated as Lot 4, as laid down on a certain map entitled, "Map of Ronald Homes at Kings Park", filed in the Office of the Clerk of the County of Suffolk on November 20, 1956, as file number 2648; which said lot according to said map, is bounded and described as follows:

BEGINNING at a point on the northerly side of Thistle Lane, distant 190.91 feet easterly from the extreme easterly end of the arc connecting the northerly side of Thistle Lane with the easterly side of Eighth Avenue;

RUNNING THENCE North 01 degree 02 minutes 20 seconds East, 134.00 feet to land now or formerly of Mariana and land of J. Burns;

THENCE South 88 degrees 57 minutes 40 seconds East, 75.00 feet;

THENCE South 01 degree 02 minutes 20 seconds West, 134.00 feet to the northerly side of Thistle Lane;

THENCE along the northerly side of Thistle Lane, North 88 degrees 57 minutes 40 seconds West, 75.00 feet to the point or place of BEGINNING.

LOAN #:

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 8 of this Security Instrument and in any Rider signed by me and recorded with it.

_____ (Seal)
PETER GAYNOR

_____ (Seal)
MARCH GAYNOR

State of NEW YORK )
                              ) ss:
County of _Nassau_____ )

On the ___ day of _____ in the year _____ before me, the undersigned, a Notary Public in and for said State, personally appeared _Peter Gaynor + Nancy Gaynor_

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

JEFFREY ALAN SHEFFLER
Notary Public, State of New York
No. 304820800-Nassau County
Notary Public Commission Expires Nov 30, 2008

My commission expires:



## SUFFOLK COUNTY CLERK
### RECORDS OFFICE
### RECORDING PAGE

Type of Instrument: ASSIGNMENT OF MORTGAGE/MOP          Recorded:    10/01/2004
Number of Pages: 2                                       At:          11:27:51 AM
Receipt Number : 04-0109286

                                                         LIBER:      M00020873
                                                         PAGE:       108

District:              Section:               Block:              Lot:
0800                   025.00                 02.00               015.000
                    EXAMINED AND CHARGED AS FOLLOWS
Received the Following Fees For Above Instrument

                                       Exempt                                    Exempt
Page/Filing        $6.00        NO        Handling              $5.00     NO
COE                $5.00        NO        NYS SRCHG             $15.00     NO
Notation           $0.50        NO        Cert.Copies           $0.00     NO
RPT               $30.00        NO        SCTM                  $0.00     NO
                                          Fees Paid            $61.50
                    THIS PAGE IS A PART OF THE INSTRUMENT
                          THIS IS NOT A BILL

                          Edward P.Romaine
                          County Clerk, Suffolk County

Number of pages _____ 2

**TORRENS**

Serial # _____

Certificate # _____

Prior Ctf. # _____

RECORDED
2004 Oct 01 11:27:51 AM
Edward P.Romaine
CLERK OF
SUFFOLK COUNTY
L M00020873
P 108

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

**FEES**

| | |
|---|---|
| Page / Filing Fee | 6 |
| Handling | 5. 00 |
| TP-584 | |
| Notation | ─.50ᵈ |
| EA-52 17 (County) _____ Sub Total | 11.50 |
| EA-5217 (State) | |
| R.P.T.S.A. | 30.00 |
| Comm. of Ed. | 5. 00 |
| Affidavit | |
| Certified Copy | |
| NYS Surcharge | 15. 00  Sub Total  50 |
| Other | Grand Total  67.50 |

Mortgage Amt. _____
1. Basic Tax _____
2. Additional Tax _____
Sub Total _____
Spec./Asslt. _____
or
Spec. /Add. _____
TOT. MTG. TAX _____
Dual Town _____ Dual County _____
Held for Appointment _____
Transfer Tax _____
Mansion Tax _____

The property covered by this mortgage is
or will be improved by a one or two
family dwelling only.

YES _____ or NO _____

If NO, see appropriate tax clause on
page # _____ of this instrument.

10 Ⓡ

| 4 Dist 0800 | Section 025 | Block 02 | Lot 015 | 5 Community Preservation Fund |
|---|---|---|---|---|

Real Property
Tax Service
Agency
Verification

0800 02500 0200 015000

RPTSA
RKWO A
21-SEP-04

Consideration Amount $ _____

CPF Tax Due   $ _____

Improved _____

Vacant Land _____

TD _____

TD _____

TD _____

6 Satisfactions/Discharges/Releases List Property Owners Mailing Address
**RECORD & RETURN TO:**

Interstate Home Loan Center
80 Jerusalem Avenue
Hicksville NY 11801

| 7 | Title Company Information |
|---|---|
| Co. Name | Topaz Abstract |
| Title # | |

## Suffolk County Recording & Endorsement Page

This page forms part of the attached _____ ACH _____ made by:
(SPECIFY TYPE OF INSTRUMENT)

Interstate Home
Loan Center

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

Ⓐ

TO

Wells Fargo

In the Township of  Smithtown
In the VILLAGE
or HAMLET of _____

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

## IMPORTANT NOTICE

If the document you've just recorded is your SATISFACTION OF MORTGAGE, please be aware of the following:

If a portion of your monthly mortgage payment included your property taxes, you will now need to contact your local Town Tax Receiver so that you may be billed directly for all future property tax statements.

Local property taxes are payable twice a year: on or before January 10th and on or before May 31st. Failure to make payments in a timely fashion could result in a penalty.

**Please contact your local Town Tax Receiver with any questions regarding property tax payment.**

Babylon Town Receiver of Taxes
200 East Sunrise Highway
North Lindenhurst, N.Y. 11757
(631) 957-3004

Brookhaven Town Receiver of Taxes
250 East Main Street
Port Jefferson, N.Y. 11777
(631) 473-0236

East Hampton Town Receiver of Taxes
300 Pantigo Place
East Hampton, N.Y. 11937
(631) 324-2770

Huntington Town Receiver of Taxes
100 Main Street
Huntington, N.Y. 11743
(631) 351-3217

Islip Town Receiver of Taxes
40 Nassau Avenue
Islip, N.Y. 11751
(631) 224-5580

Riverhead Town Receiver of Taxes
200 Howell Avenue
Riverhead, N.Y. 11901
(631) 727-3200

Shelter Island Town Receiver of Taxes
Shelter Island Town Hall
Shelter Island, N.Y. 11964
(631) 749-3338

Smithtown Town Receiver of Taxes
99 West Main Street
Smithtown, N.Y. 11787
(631) 360-7610

Southampton Town Receiver of Taxes
116 Hampton Road
Southampton, N.Y. 11968
(631) 283-6514

Southold Town Receiver of Taxes
53095 Main Street
Southold, N.Y. 11971
(631) 765-1803

Sincerely,

Edward P. Romaine
Suffolk County Clerk

dw
2/99

Recording requested by:
INTERSTATE HOME LOAN CENTER,INC.

When recorded mail to:
INTERSTATE HOME LOAN CENTER,INC.
80 JERUSALEM AVENUE
HICKSVILLE, NY 11801

**TOPAZ**
**ABSTRACT**
**CORPORATION**



370 Old Country Road
Garden City, N.Y. 11530

## CORPORATION ASSIGNMENT OF MORTGAGE
### NEW YORK

FOR VALUE RECEIVED, the undersigned corporation hereby grants, assigns and transfers to
WELLS FARGO BANK N.A.
3480 STATEVIEW BLVD FORT MILL SC
all beneficial interest under that certain Mortgage, dated August 05, 2004                , executed by
PETER GAYNOR AND MARCY GAYNOR

*Principal amount 289000.00*

Mortgagor,

and recorded   CONCURRENTLY HEREWITH

in the Office of the County Recorder of  SUFFOLK            County, State of   NEW YORK

Legal description of property:
8 THISTLE LANE  KINGS PARK NY
*Dist 0400  Sec 025.00  Bleck 02.00  Lot 015.000*

TOGETHER with the note or notes therein described or referred to, the money due and to become
due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Apr to.

Assignment Date  8-5-04

Corporation:
INTERSTATE HOME LOAN CENTER,INC.

80 Jerusalem Avenue
Hicksville, NY 11801

By:
ALEX NIVEN
Title:            PRESIDENT

STATE OF  NEW YORK
On the  5th  day of  August            COUNTY OF  NASSAU            ss:
and for said State, personally appeared  ALEX NIVEN        , before me, the undersigned, a Notary Public in

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is / are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon
behalf of which the individual(s) acted, executed the instrument.

NOTARY SEAL STAMP

James R. Pasano
Notary Public-State of New York
No. 01PA6096017
Qualified in Suffolk County
Commission Expires 7/31/2007

WITNESS my hand and official seal.

James R. Pasano
Notary Public

Number of pages

**3**

This document will be public record. Please remove all Social Security Numbers prior to recording.

RECORDED
2007 Oct-26 12:31:40 PM
Judith A. Pascale
CLERK OF
SUFFOLK COUNTY
L M00021625
P 971

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

**3**         FEES

| | | Mortgage Amt. |
|---|---|---|
| Page / Filing Fee | _____ | 1. Basic Tax |
| Handling | 5.00 | 2. Additional Tax |
| TP-584 | | Sub Total |
| Notation | | Spec./Asst. |
| EA-52 17 (County) | Sub Total _____ | or |
| | | Spec./Add. |
| EA-5217 (State) | | TOT. MTG. TAX |
| R.P.T.S.A. | 30 — | Dual Town ___ Dual County ___ |
| Comm. of Ed. | 5.00 | Held for Appointment _____ |
| Affidavit | | Transfer Tax |
| Certified Copy | | Mansion Tax |
| NYS Surcharge | 15.00 | The property covered by this mortgage is or will be improved by a one or two family dwelling only. |
| Other | | YES _____ or NO _____ |
| | Sub Total | |
| | Grand Total | 104500 |

If NO, see appropriate tax clause on page # _____ of this instrument.

| 4 | Dist0000 | 0000 02500 0200 015000 | 5 | Community Preservation Fund |
|---|---|---|---|---|

Real Property Tax Service Agency Verification

Consideration Amount $ _____

CPF Tax Due $ _____

Improved _____

Vacant Land _____

TD _____

TD _____

TD _____

| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address RECORD & RETURN TO: |
|---|---|

Steven J. Baum, PC
220 Northpointe Pkwy., Suite G
P.O. Box 1291
Buffalo, NY 14240-1291

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

| 7 | Title Company Information |
|---|---|
| | Co. Name Prime Time |
| | Title # PT-26223 |

**8**    Suffolk County Recording & Endorsement Page

This page forms part of the attached    Assignment of Mortgage    made by:

(SPECIFY TYPE OF INSTRUMENT)

**Wells Fargo**

The premises herein is situated in SUFFOLK COUNTY, NEW YORK.

TO

**Deutsche Bank**

In the TOWN of _**Smithtown**_

In the VILLAGE

or HAMLET of _____

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

(over)

## IMPORTANT NOTICE

If the document you've just recorded is your SATISFACTION OF MORTGAGE, please be aware of the following:

If a portion of your monthly mortgage payment included your property taxes, you will now need to contact your local Town Tax Receiver so that you may be billed directly for all future property tax statements.

Local property taxes are payable twice a year: on or before January 10 and on or before May 31. Failure to make payments in a timely fashion could result in a penalty.

Please contact your local Town Tax Receiver with any questions regarding property tax payment.

**Babylon Town Receiver of Taxes**
200 East Sunrise Highway
North Lindenhurst, N.Y. 11757
(631) 957-3004

**Brookhaven Town Receiver of Taxes**
One Independence Hill
Farmingville, N.Y. 11738
(631) 451-9009

**East Hampton Town Receiver of Taxes**
300 Pantigo Place
East Hampton, N.Y. 11937
(631) 324-2770

**Huntington Town Receiver of Taxes**
100 Main Street
Huntington, N.Y. 11743
(631) 351-3217

**Islip Town Receiver of Taxes**
40 Nassau Avenue
Islip, N.Y. 11751
(631) 224-5580

**Riverhead Town Receiver of Taxes**
200 Howell Avenue
Riverhead, N.Y. 11901
(631) 727-3200

**Shelter Island Town Receiver of Taxes**
Shelter Island Town Hall
Shelter Island, N.Y. 11964
(631) 749-3338

**Smithtown Town Receiver of Taxes**
99 West Main Street
Smithtown, N.Y. 11787
(631) 360-7610

**Southampton Town Receiver of Taxes**
116 Hampton Road
Southampton, N.Y. 11968
(631) 283-6514

**Southold Town Receiver of Taxes**
53095 Main Street
Southold, N.Y. 11971
(631) 765-1803

Sincerely,

Judith A. Pascale
Suffolk County Clerk

dw
2/99

# ASSIGNMENT OF MORTGAGE

*KNOW*, that Wells Fargo Bank, N.A., 11200 West Parkland Avenue, Milwaukee, WI 53224, Assignor in consideration of One or More Dollars ($1.00) paid by Deutsche Bank National Trust Company, not in its individual capacity, but solely as trustee on behalf of GSAA Home Equity Trust 2005-1, 300 Grand Avenu , Los Angeles, CA 90071, Assignee, hereby assigns unto the Assignee, a certain mortgage made by PETER GAYNOR, MARCY GAYNOR, given to Interstate Home Loan Center, Inc., to secure the sum of Two hundred and eighty nine thousand dollars ($289,000.00) and interest, dated the 5th day of August, 2004, recorded on the 1st day of October, 2004 in the Office of the Clerk of the County of SUFFOLK at Liber 20873 of Mortgages at Page 107 covering premises commonly known as 6 THISTLE LANE, KINGS PARK, NY 11754 (said premises are more particularly described in said mortgage) together with the bond or obligation described in said mortgage, and the moneys due and to grow thereon with interest.  Said mortgage was assigned to Wells Fargo Bank, N.A. by assignment recorded October 1, 2004 in Liber 20873 at page 108.

*TO HAVE AND TO HOLD* the same unto the assignee, and to the successors, legal representatives and assigns of the assignee forever.

*THIS* Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.  This assignment is effective as of the 1st day of August, 2007.

*IN WITNESS WHEREOF*, the Assignor has caused these presents to be signed by its duly authorized officer this 9th day of October, 2007.

**IN PRESENCE OF**

Wells Fargo Bank, N.A.

BY: *Elizabeth Mathis*

Elizabeth Mathis, VP of Loan Documentation

State of South Carolina
County of York          ss:
On the 9th day of October, in the year 2007, before me, the undersigned, a notary public in and for said state, personally appeared Elizabeth Mathis, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the Fort Mill, South Carolina. *(Insert city or political subdivision and state or other place acknowledgment taken— if acknowledgment is taken outside of New York State)*

Notary Public

OFFICIAL SEAL
Notary Public
State of South Carolina
GERALDINE JOHNSON
My Commission Expires 1/15/2013

R + L

Steven J. Baum, PC
220 Northpointe Pkwy., Suite G
P.O. Box 1291
Buffalo, NY 14240-1291

**Topaz Abstract Corporation**

Schedule A Description

Page    1

ALL that certain plot, piece or parcel of land, situate, lying and being at Kings Park,
Town of Smithtown, County of Suffolk and State of New York, known and designated
as Lot 4, as laid down on a certain map entitled, "Map of Ronald Homes at Kings
Park", filed in the Office of the Clerk of the County of Suffolk on November 20, 1958,
as file number 2849, which said lot according to said map, is bounded and described
as follows:

BEGINNING at a point on the northerly side of Thistle Lane, distant 190.91 feet
easterly from the extreme easterly end of the arc connecting the northerly side of
Thistle Lane with the easterly side of Eighth Avenue;

RUNNING THENCE North 01 degree 02 minutes 20 seconds East, 134.00 feet to
land now or formerly of Mariana and land of J. Burns;

THENCE South 88 degrees 57 minutes 40 seconds East, 75.00 feet;

THENCE South 01 degree 02 minutes 20 seconds West, 134.00 feet to the northerly
side of Thistle Lane;

THENCE along the northerly side of Thistle Lane, North 88 degrees 57 minutes 40
seconds West, 75.00 feet to the point or place of BEGINNING.



### SUFFOLK COUNTY CLERK
### RECORDS OFFICE
### RECORDING PAGE

Type of Instrument: ASSIGNMENT OF MORTGAGE          Recorded: 01/13/2010
Number of Pages: 2                                  At:        02:57:23 PM
Receipt Number : 10-0005183

LIBER:   M00021906
PAGE:    540

District:          Section:          Block:          Lot:
0800               025.00            02.50           015.000

EXAMINED AND CHARGED AS FOLLOWS
Received the Following Fees For Above Instrument

|               |          | Exempt |               |         | Exempt |
|---------------|----------|--------|---------------|---------|--------|
| Page/Filing   | $10.00   | NO     | Handling      | $20.00  | NO     |
| COE           | $5.00    | NO     | NYS SRCHG     | $15.00  | NO     |
| Notation      | $1.50    | NO     | Cert.Copies   | $0.00   | NO     |
| RPT           | $30.00   | NO     |               |         |        |

Fees Paid          $81.50

THIS PAGE IS A PART OF THE INSTRUMENT
THIS IS NOT A BILL

JUDITH A. PASCALE
County Clerk, Suffolk County

Number of pages _____

**This document will be public record. Please remove all Social Security Numbers prior to recording.**

RECORDED
2010 Jan 13 02:57:25 PM
JUDITH A. PASCALE
CLERK OF
SUFFOLK COUNTY
L M00001906
P 540

| Deed / Mortgage Instrument | Deed / Mortgage Tax Stamp | Recording / Filing Stamps |
|---|---|---|

**FEES**

| | | |
|---|---|---|
| Page / Filing Fee | | Mortgage Amt. |
| Handling | .00 | 1. Basic Tax |
| TP-584 | | 2. Additional Tax |
| Notation | 3N | Sub Total |
| EA-52 17 (County) | Sub Total 3 150 | Spec./Assit. |
| EA-5217 (State) | | Spec. /Add. |
| R.P.T.S.A. | | TOT. MTG. TAX |
| Comm. of Ed. | 5. 00 | Dual Town ____ Dual County ____ |
| Affidavit | | Held for Appointment |
| Certified Copy | | Transfer Tax |
| | | Mansion Tax |
| NYS Surcharge | 15. 00  Sub Total 50 | The property covered by this mortgage is or will be improved by a one or two family dwelling only. |
| Other | Grand Total 8150 | YES ____ or NO ____ |
| | | If NO, see appropriate tax clause on page # ____ of this instrument. |

| 4 | Dist. 0800 Section 025.00 Block 02.00 Lot 015.000 | 5 | Community Preservation Fund |
|---|---|---|---|
| Real Property Tax Service Agency Verification | | Consideration Amount $ ____ |
| | | CPF Tax Due      $ ____ |
| | | Improved ____ |
| | | Vacant Land ____ |

| 6 | Satisfactions/Discharges/Releases List Property Owners Mailing Address |
|---|---|

**RECORD & RETURN TO:**

Steven J. Baum, PC
220 Northpointe Pkwy., Suite B
Amherst, NY 14228

| | TD ____ |
| | TD ____ |
| | TD ____ |

Mail to: Judith A. Pascale, Suffolk County Clerk
310 Center Drive, Riverhead, NY 11901
www.suffolkcountyny.gov/clerk

| 7 | Title Company Information |
|---|---|
| Co. Name ____ |
| Title # ____ |

| 8 | **Suffolk County Recording & Endorsement Page** |

This page forms part of the attached _Assignment of Mortgage_ made by:
(SPECIFY TYPE OF INSTRUMENT)

Deutsche

TO

Deutsche

The premises herein is situated in
SUFFOLK COUNTY, NEW YORK.

In the TOWN of _Smithtown_

In the VILLAGE ____

or HAMLET of ____

BOXES 6 THRU 8 MUST BE TYPED OR PRINTED IN BLACK INK ONLY PRIOR TO RECORDING OR FILING.

## IMPORTANT NOTICE

If the document you've just recorded is your **SATISFACTION OF MORTGAGE**, please be aware of the following:

If a portion of your monthly mortgage payment included your property taxes, **you will now need to contact your local Town Tax Receiver so that you may be billed directly for all future property tax statements.**

Local property taxes are payable twice a year: on or before January 10th and on or before May 31st. Failure to make payments in a timely fashion could result in a penalty.

**Please contact your local Town Tax Receiver with any questions regarding property tax payment.**

Babylon Town Receiver of Taxes
200 East Sunrise Highway
North Lindenhurst, N.Y. 11757
(631) 957-3004

Brookhaven Town Receiver of Taxes
One Independence Hill
Farmingville, N.Y. 11738
(631) 451-9009

East Hampton Town Receiver of Taxes
300 Pantigo Place
East Hampton, N.Y. 11937
(631) 324-2770

Huntington Town Receiver of Taxes
100 Main Street
Huntington, N.Y. 11743
(631) 351-3217

Islip Town Receiver of Taxes
40 Nassau Avenue
Islip, N.Y. 11751
(631) 224-5580

Riverhead Town Receiver of Taxes
200 Howell Avenue
Riverhead, N.Y. 11901
(631) 727-3200

Shelter Island Town Receiver of Taxes
Shelter Island Town Hall
Shelter Island, N.Y. 11964
(631) 749-3338

Smithtown Town Receiver of Taxes
99 West Main Street
Smithtown, N.Y. 11787
(631) 360-7610

Southampton Town Receiver of Taxes
116 Hampton Road
Southampton, N.Y. 11968
(631) 283-6514

Southold Town Receiver of Taxes
53095 Main Street
Southold, N.Y. 11971
(631) 765-1803

Sincerely,

Judith A. Pascale
Suffolk County Clerk



Loan

## ASSIGNMENT OF MORTGAGE

County of SUFFOLK, State of New York

Assignor: Deutsche Bank National Trust Company, not in its individual capacity, but solely as trustee on behalf of GSAA Home Equity Trust 2005-1, 300 Grand Ave, Los Angeles, CA 90071

Assignee: Deutsche Bank National Trust Company, as Trustee for the holders of GSAA Home Equity Trust 2005-1, Asset-Backed Certificates, Series 2005-1, 300 Grand Ave, Los Angeles, CA 90071

Original Lender: Interstate Home Loan Center, Inc.

Mortgage made by PETER GAYNOR, MARCY GAYNOR, dated the 5th day of August, 2004 in the amount of Two hundred and eighty nine thousand dollars ($289,000.00) and interest, recorded on the 1st day of October, 2004 in the Office of the Clerk of the County of SUFFOLK at Liber 20873 of Mortgages at Page 107. Said mortgage was assigned from Interstate Home Loan Center, Inc. to Wells Fargo Bank, N.A. by an assignment of mortgage dated the 5th day of August, 2004 and recorded on the 1st day of October, 2004 at Liber 20873 of mortgages at Page 108. Said mortgage was further assigned from Wells Fargo Bank, N.A. to Deutsche Bank National Trust Company, not in its individual capacity, but solely as trustee on behalf of GSAA Home Equity Trust 2005-1 by an assignment of mortgage dated the 9th day of October, 2007 and recorded on the 26th day of October, 2007 at Liber 21625 of mortgages at Page 971.

Property Address: 6 THISTLE LANE, KINGS PARK, NY 11754                SBL #025.00-02.00-015.000

Know that All Men By These Present in consideration of the sum of One and No/100th Dollars and other good valuable consideration, paid to the above named assignor, the receipt and sufficiency of which is hereby acknowledged the Said Assignor hereby assigns unto the above named Assignee the said Mortgage, Together with all moneys now owing or that may hereafter become due or owing in Respect thereof, and the full benefit of all the powers and of all the covenants and Provisions therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

*TO HAVE AND TO HOLD* the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

*THIS* Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.

*IN WITNESS WHEREOF*, the Assignor has caused these presents to be signed by its duly authorized officer this 23rd day of November, 2009.

*IN PRESENCE OF*

Wells Fargo Bank N.A. Attorney-In-Fact for Deutsche Bank National Trust Company, not in its individual capacity, but solely as trustee on behalf of GSAA Home Equity Trust 2005-1

Steven J. Baum, PC
220 Northpointe Pkwy., Suite B
Amherst, NY 14228

BY: _____
Herman John Kennerty, VP of Loan Documentation



State of South Carolina
County of York  ss:

On this 23rd day of November, 2009, before me, the undersigned, a notary public in and for said state, personally appeared Herman John Kennerty, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the Fort Mill, South Carolina. *(Insert city or political subdivision and state or other place acknowledgment taken— if acknowledgment is taken outside of New York State)*

_____
Notary Public

OFFICIAL SEAL
Notary Public
State of South Carolina
CHRISTEL RIVERS
My Commission Expires August 3, 2016



Record and Return To:
Wells Fargo Bank, N.A.
8480 Stagecoach Circle
Attn: MAC X3800-027
Frederick, MD 21701

LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that Deutsche Bank National Trust Company, a national banking association organized and existing under the laws of the United States, and having its usual place of business at 1761 East St. Andrew Place, Santa Ana, California, 92705, in its capacity as Trustee (the "Trustee") under and pursuant to the agreements ("Agreements") governing the trusts referenced on Exhibit A hereto ("Trusts"), hereby constitutes and appoints Wells Fargo Bank, N.A., as Servicer ("Servicer") for the Trusts, by and through the Servicer's officers, the Trustee's true and lawful Attorney-in-Fact, in the Trustee's name, place and stead and for the Trustee's benefit, in connection with all mortgage loans serviced by the Servicer pursuant to the Agreements solely for the purpose of performing such acts and executing such documents in the name of the Trustee necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust" respectively) and promissory notes secured thereby (the "Mortgage Notes") for which the undersigned is acting as Trustee for various certificateholders (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust) and for which Wells Fargo Bank, N.A., is acting as the Servicer.

This Appointment shall apply only to the following enumerated transactions and nothing herein or in the Agreements shall be construed to the contrary:

1.    The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recording is solely for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued; provided that (i) said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured and (ii) otherwise conforms to the provisions of the Agreements.

2.    The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

3.    The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

4.    The completion of loan assumption agreements.

5.    The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

6.    The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7.    The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8.    The full enforcement of and preservation of the Trustee's interests in the Mortgage Notes, Mortgages or Deeds of Trust, and in the proceeds thereof, by way of, including but not limited to, foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or the termination, cancellation or rescission of any such foreclosure, the initiation, prosecution and completion of eviction actions or proceedings with respect to, or the termination, cancellation or rescission of any such eviction actions or proceedings, and the pursuit of title insurance, hazard insurance and claims in bankruptcy proceedings, including, without limitation, any and all of the following acts:

a.    the substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

b.    the preparation and issuance of statements of breach or non-performance;

c.    the preparation and filing of notices of default and/or notices of sale;

d.    the cancellation/rescission of notices of default and/or notices of sale;

e.    the taking of deed in lieu of foreclosure;

f.    the filing, prosecution and defense of claims, and to appear on behalf of the Trustee, in bankruptcy cases affecting Mortgage Notes, Mortgages or Deeds of Trust;

g.    the preparation and service of notices to quit and all other documents necessary to initiate, prosecute and complete eviction actions or proceedings;

h.    the tendering, filing, prosecution and defense, as applicable, of hazard insurance and title insurance claims, including but not limited to appearing on behalf of the Trustee in quiet title actions; and

i.    the preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8.a. through 8.h. above.

9.    With respect to the sale of property acquired through a foreclosure or deed-in lieu of foreclosure, including, without limitation, the execution of the following documentation:

a.    listing agreements;

b.    purchase and sale agreements;

c.    grant/warranty/quit claim deeds or any other deed causing the transfer of title of the property to a party contracted to purchase same;

d.    escrow instructions; and

e.    any and all documents necessary to effect the transfer of property.

10.    The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall be effective as of June 14, 2017.

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

Solely to the extent that the Servicer has the power to delegate its rights or obligations under the Agreements, the Servicer also has the power to delegate the authority given to it by the Trustee under this Limited Power of Attorney, for purposes of performing its obligations and duties by executing such additional powers of attorney in favor of its attorneys-in-fact as are necessary for such purpose. The Servicer's attorneys-in-fact shall have no greater authority than that held by the Servicer.

Nothing contained herein shall (i) limit in any manner any indemnification provided by the Servicer to the Trustee under the Agreements, or (ii) be construed to grant the Servicer the power to initiate or defend any suit, litigation or proceeding in the name of Deutsche Bank National Trust Company, except as specifically provided for herein and solely in its capacity as Trustee. If the Servicer receives any notice of suit, litigation or proceeding in the name of Deutsche Bank National Trust Company, then the Servicer shall promptly forward a copy of same to the Trustee.

This limited power of attorney is not intended to extend the powers granted to the Servicer under the Agreements or to allow the Servicer to take any action with respect to Mortgages, Deeds of Trust or Mortgage Notes not authorized by the Agreements.

The Servicer hereby agrees to indemnify and hold the Trustee and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with any misuse by the Servicer of the powers granted to it hereunder. In accepting this indemnity, the Trustee does not waive, but rather expressly reserves, any other indemnities available under the Agreements. Pursuant to the Agreements, the Trustee shall not be liable for the actions of the Servicer or any Subservicers under this Limited Power of Attorney. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreements or the earlier resignation or removal of the Trustee under the Agreements.

This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York, without regard to conflicts of law principles of such state.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

3

IN WITNESS WHEREOF, Deutsche Bank National Trust Company, as Trustee for the Trusts listed on Exhibit A has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by a duly elected and authorized signatory this 14th day of June, 2017.

Deutsche Bank National Trust Company,
as Trustee for the Trusts on Exhibit A

By: _____
Name:  Karlene Benvenuto
Title:   Assistant Vice President

Witness:

Jenny Pham

Witness:

Timothy Johnson

Prepared by:

Name:   Jonathan Miao
Title:   Trust Administrator
Address:        Deutsche Bank National Trust Company
                 1761 E. Saint Andrew Place
                 Santa Ana, CA 92705

4

DB GS

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF ORANGE

On June 14, 2017 before me, Dennis Keith Dickey II, a Notary Public, personally appeared Karlene Benvenuto, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed that same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.
(SEAL)

_____
Signature of Notary Public

5

DB GSi